[No. 20599. Department Two. January 6, 1928.]

G. E. CAMPBELL, *Appellant*, v. INLAND EMPIRE RAILROAD COMPANY, *Respondent*.[1]

[1] MASTER AND SERVANT (1, 2, 16)—PRINCIPAL AND AGENT (57)—EXISTENCE OF RELATION—WRONGFUL ACTS OF AGENT. A physician, paid and employed by a railway employees' "aid" corporation, organized to furnish medical attention to the members, and controlled by a board of directors the majority of whom were railway employees and the balance railway officials, the expenses of the aid corporation being supplied by contributions of its members and of the railway company, is the employee or agent of the aid corporation, and not of the railroad company, which would not be liable for his false representations that an injured employee was fully recovered, inducing him to execute a release of his claim for damages.

[2] PRINCIPAL AND AGENT (61)—RIGHTS OF THIRD PERSONS—IMPLIED RATIFICATION. In such a case, the railway company's retention of the benefits of the release cannot be held to be a ratification of the doctor's misrepresentations by which it was secured, where the company merely required the doctor's release before putting the employee to work and paying him his back wages, when he applied for work, and made no statement that he had completely recovered as an inducement to him to sign the release.

Appeal from a judgment of the superior court for Spokane county, Lindsley, J., entered November 13,

[1] Reported in 262 Pac. 968.

1926, dismissing an action in tort, upon sustaining a motion for a directed verdict in favor of the defendant. Affirmed.

*McCarthy, Edge & Lantz,* for appellant.

*Graves, Kizer & Graves,* for respondent.

MAIN, J.—The plaintiff brought this action to recover damages for personal injuries. The defendant denied liability and, as an affirmative defense, plead a release. The plaintiff replied by asserting that the release was procured by fraud. The cause came on for trial before the court and a jury and, at the conclusion of all of the evidence, the defendant moved for a directed verdict, which motion was sustained. From the judgment entered dismissing the action, the plaintiff appeals.

The respondent operated a railroad between Spokane, Washington, and Moscow, Idaho. The appellant was the rear brakeman upon one of its freight trains. The train, on the particular occasion of the appellant's injury, stopped about a mile and a half west of West Fairfield in this state. The appellant, thinking that he could be of some assistance in removing the trouble necessary to get the train in motion again, went from the rear end of the train, over the top of the cars, towards the front. The train was pulled by two electric motors. The current was taken from an overhead trolley wire. The appellant, as he went to the front of the train, came in contact with a trolley pole which was not then in use, but which was charged with a heavy current of electricity. As a result, he fell from the top of the train to the ground below and sustained the injuries for which recovery is sought.

After the accident, he was taken aboard the train and to the city of Spokane. Then he was taken to the office of Doctor E. R. Northrop. Thereafter, Doctor

Northrop treated him and he was also attended from time to time by his family physician, Doctor Harry E. Rhodehamel.

The accident happened on August 5, 1925. Early in September, the appellant, believing that he had sufficiently recovered to return to work, desired to do so. It was the regulation of the respondent company that he could not be put back to work without a release from the care of Doctor Northrop. At the request of the appellant, Doctor Northrop wrote a letter to the respondent expressing some doubt as to the respondent's being able then to return to work and suggesting that he be allowed to return and, if unable to continue, that he should resume what is called the rest period. On September 9, the appellant, in the office of the respondent preparatory to his returning to work, filled out a printed blank, the questions on which called for information as to the nature and cause of the accident, the extent of the injury, etc. Over the sentence in the blank which was a release, the appellant wrote not permanent, unless he was able to stand the work that he had previously been doing.

A few days later, the appellant went on his regular run to Moscow. He worked on the way down, but was unable to work upon the return trip. Early in October of the same year, the appellant, believing he was then able to work and being in need of financial assistance, applied to the respondent for an advancement of money or to be put to work. He was told that it would be first necessary for him to get a release from the care of Doctor Northrop. He then went to the doctor again and the latter wrote the following letter to the respondent:

"G. E. Campbell who was injured August 5th will have sufficiently recovered to be able to return to work by the 15th of October."

This letter is dated October 6, 1925. A few days later and on October 13, the respondent paid to the appellant the sum of $470.92, which would have been the amount that he would have earned had he continued to work up to that time, and the appellant signed a release discharging the respondent from any claim or liability for damages. The appellant returned to work, on or about the 2d of November following, and worked until the 13th of January, 1926. Some months later, he began the present action.

[1] The fraud claimed, by which it is sought to make a question for the jury on the release, is based upon the statement which the appellant says Doctor Northrop made, when he approached him for the discharge from his care, which the doctor gave on October 6. The appellant testified that the doctor, at this time, told him that he was fully recovered from his injuries, but that he had some muscular soreness or rheumatism. This the doctor categorically denied. It will be assumed, but not decided, that this question would be for the jury, if Doctor Northrop was the agent or employee of the respondent company.

The question which is decisive upon this appeal is, therefore, the status of Doctor Northrop as to his employment. He was employed and paid by the Inland Empire Aid Department, a corporation. The purpose of this corporation was to supply its members with medical attendance, etc., in case of illness or injury. The expenses of the department are met by dues paid by the members who are the employees of the respondent, all of whom are required to be members. The respondent contributes sixty dollars per month. The dues from the members amount to three hundred and fifty dollars or four hundred dollars per month. It is out of this fund that Doctor Northrop was paid. The affairs of the aid department were administered by a board of

managers composed of eleven persons. Four of the officers of the respondent company were ex-officio members of the board. The remaining seven members were elected annually by the employees from each department of the service, the street railway men electing one member, the shop men one member, and so on. The board of managers employed the physician and dispensed the funds. Doctor Northrop had been employed by the department continuously for approximately nineteen years. As the evidence shows, he was unanimously elected by the board of managers each year. There is no evidence from which it can be inferred that the officers of the respondent company, who are members of the board, dominate and control its affairs. It is true that one of the officers acts as treasurer and another as secretary without compensation and that the meetings of the board are held in the offices of the respondent company, but it could not be inferred from this that the action of the board of managers was dictated and controlled by the four officers of the company who were minority members of the board. The respondent is a corporation. The aid department is a separate and independent corporation. Doctor Northrop was employed and paid by the latter, and it must follow that he was its agent and representative and not that of the respondent. The latter would not be liable, therefore, for any representations that he had made, assuming that they were made, as the appellant testified. *Reynolds v. Day,* 93 Wash. 395, 161 Pac. 62.

[2] It is said, however, that the respondent accepted and retained the benefits of the misrepresentation of the doctor and, for this reason, became burdened therewith. The respondent did not request the doctor to make any statement as to the appellant's condition. It made no statement through its officers

or agents to the appellant as an inducement to him to sign the release that he had completely recovered. When the appellant applied for aid and for work, he was told by the company that it was necessary that he be released from the care of Doctor Northrop first. This release was obtained by the appellant. After this, the respondent paid the money above mentioned to the appellant and the latter signed the release. We do not see how it can be said that the respondent, in requiring the release from liability at the time the money was paid, adopted or ratified any statement that Doctor Northrop may have made to the appellant as to his condition.

The case of *Bailey v. London Guarantee & Accident Co.*, 72 Ind. App. 84, 121 N. E. 128, cited by the appellant as very much in point on this question is based upon different facts. In that case, the defendant's agents, who made the settlement and obtained the release from the plaintiff, told him what the doctor who had been treating him had stated to them as to his injury and the probability of his early recovery. The opinion of the doctor in that case was used by the agents of the company to induce the plaintiff to make the settlement and execute the release. Like, or similar, facts do not appear in the present case. As stated, Doctor Northrop was employed by the board of managers of the aid department. The board of managers was elected by the employees of the respondent, of whom the appellant was one, and the doctor was the representative of the department and not the employee or agent of the respondent.

The judgment will be affirmed.

MACKINTOSH, C. J., HOLCOMB, ASKREN, and FULLERTON, JJ., concur.